**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

(1) WILLIAM BOYDE POOLE, an individual,

Plaintiff,

vs.

(1) PRINCIPAL LIFE INSURANCE COMPANY and (2) CARL PETTIGREW, an individual,

Defendants.

Case No. CIV-17-554-F

(Oklahoma County Case No. CJ-2016-6329)

**DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1146, Defendant Principal Life Insurance Company ("Principal Life") hereby removes this action from the District Court of Oklahoma County, Oklahoma, where it was filed as Case No. CJ-2016-6329, to the United States District Court for the Western District of Oklahoma. As the grounds for removal, Principal Life states as follows:

1. On or about December 13, 2016, Plaintiff filed a Petition (the "Complaint") in the District Court of Oklahoma County, State of Oklahoma, against (1) Principal Life and (2) Dr. Carl Pettigrew, D.O. The case, *William Boyde Poole v. Principal Life Insurance Company and Carl Pettigrew, D.O.*, was assigned Case No. CJ-2016-6329 (the "State Court Action"). A copy of the Complaint is attached here as Exhibit 1.

2. The District Court of Oklahoma County issued civil summonses on December 13, 2016. The summonses were served on both Dr. Pettigrew and the registered

service agent for Principal Life on April 24, 2017. Copies of the summonses are attached here as Exhibit 2.

3. No defendant has filed an answer in the State Court Action. In filing this Notice of Removal, Principal Life does not waive any defense or counterclaim that may be available.

**Basis for Removal**

4. Principal Life removes this action from the District Court of Oklahoma County, State of Oklahoma, to this Court pursuant to 28 U.S.C. § 1332 and based on the diversity of citizenship of Plaintiff and Principal Life. Principal Life is an Iowa corporation with its principal place of business in Des Moines, Iowa. Upon information and belief, Plaintiff is an individual citizen and resident of the State of Oklahoma. The amount in controversy under Plaintiff's claim against Principal Life exceeds the sum of $75,000, exclusive of interest and costs. Although defendant Dr. Pettigrew is also a citizen of the State of Oklahoma, this Court has diversity jurisdiction over this matter because, as shown below, Dr. Pettigrew has been improperly or fraudulently joined in this case.

5. This removal is proper under 28 U.S.C. § 1441 because, but for Plaintiff's improper joinder of Dr. Pettigrew as a defendant, this Court would have original jurisdiction over the action under 28 U.S.C. § 1332.

6. Dr. Pettigrew consents to this removal. *See* Consent to Removal, attached as Ex. 3. Because Dr. Pettigrew is fraudulently joined in this action, however, his consent to removal is not required. *Moseley v. Wyeth*, No. CIV-02-1120-M, 2002 WL 32991341, *1

n.4 (W.D. Okla. Sept. 13, 2002) ("If he is a fraudulently joined defendant, then his consent is not required for removal.").

7. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) because it is filed within thirty (30) days of Principal Life's receipt of the Complaint and within one (1) year of the commencement of the State Court Action.

8. Written notice of filing of this Notice of Removal will be given to the Plaintiff. Also, as required by 28 U.S.C. § 1446(d), a copy of this Notice will be filed with the Clerk of the District Court of Oklahoma County, State of Oklahoma, the court in which the State Court Action was filed.

9. Pursuant to 28 U.S.C. § 1446(a) and LCvR 81.2(a), all papers served upon Principal Life in the State Court Action at the time of this removal, consisting of the Complaint and the Civil Summons, are attached as Exhibits 1 and 2, respectively. Pursuant to LCvR 81.2(a), a true and correct copy of the docket sheet in the State Court Action, current through the date of this filing, is attached hereto as Exhibit 4.

**The Fraudulent Joinder**

10. Although both Plaintiff and Defendant Dr. Pettigrew are citizens of the State of Oklahoma, Dr. Pettigrew's joinder in this lawsuit does not prevent removal because Dr. Pettigrew has been fraudulently joined in an apparent attempt to prevent removal. Accordingly, his citizenship must be ignored for removal purposes. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *see also Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (fraudulently joined defendants "should be ignored for the purposes of assessing complete diversity"). "[T]he joinder of a resident defendant…against whom

there is in fact no cause of action, will not defeat removal." *Smith v. Texas Roadhouse, Inc*., No. CIV-14-392-HE, 2015 WL 6020277, *1 (W.D. Okla. Oct. 14, 2015) (quoting *Roe v. Gen. Am. Life Ins. Co*., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

11. Fraudulent joinder may be found upon a showing of either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988. When removal is based on fraudulent joinder, the Court must determine whether the plaintiff "'has any possibility of recovery against the party whose joinder is questioned.'" *Texas Roadhouse*, 2015 WL 6020277 at *1 (quoting *Montano v. Allstate Indem*., 211 F.3d 1278, 1278 (10th Cir. 2000)). If the Court finds the Plaintiff cannot establish a cause of action against the non-diverse party, "the Court may properly retain the case and dismiss the fraudulently joined defendant." *Neill v. State Farm Fire & Cas. Co*., No. CIV-13-627-D, 2014 WL 223455, *2 (W.D. Okla. Jan. 21, 2014).

12. "Fraudulent joinder need not involve actual fraud in the technical sense. Instead, it can occur when the plaintiff joins a 'resident defendant against whom no cause of action is stated' in order to prevent removal under a federal court's diversity jurisdiction." *Brazell v. Waite*, 525 Fed. App'x 878, *3 (10th Cir. 2013). If fraudulent joinder is not based on "outright fraud in the pleading of jurisdictional facts," then "the question becomes more closely akin to that of whether the plaintiff has properly stated a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6)." *Slover v. Equitable Variable Life Ins. Co*., 443 F. Supp. 2d 1271, 1278 (N.D. Okla. 2006).

13. As shown below, Dr. Pettigrew is fraudulently joined in this case because Plaintiff is unable to state a cause of action against him.

**The Allegations Against Defendants**

14. Plaintiff and Principal Life are parties to a Disability Insurance Policy (the "Policy") issued by Principal Life. [Compl., Ex. 1 at ¶ 1.] Dr. Pettigrew is a physician who conducted an independent medical examination ("IME") of Plaintiff pursuant to the Policy and at the request of Principal Life. [*Id*.] After Dr. Pettigrew conducted the IME, Principal Life, relying in part on Dr. Pettigrew's reported findings, determined that Plaintiff was not totally disabled beyond December 15, 2014.

15. Plaintiff alleges that Principal Life breached the terms of a disability insurance policy when Principal Life "stopped paying benefits due and owing." [*Id*. at ¶ 4.] Plaintiff further alleges Principal Life "breached its duty of good faith and fair dealing" when it ceased paying disability benefits to Plaintiff.[1] [*Id*. at ¶ 5.]

16. As an alternative claim, Plaintiff alleges that Dr. Pettigrew "prepared and shared with Defendant Principal [Life]" an IME report that was "either negligently below the standard of care or was intentionally false and was made to induce Defendant Principal [Life] to rely upon it." [*Id*. at ¶ 9.] Plaintiff also claims Dr. Pettigrew "breached the duty he owed to Plaintiff (and to Defendant Principal [Life])" and "acted intentionally to interfere with Plaintiff's contractual right to receive disability benefits." [*Id*. at ¶¶ 11, 13.]

---

[1] Principal Life denies that it breached either Policy or the duty of good faith and fair dealing.

Although Plaintiff makes only conclusory allegations against Dr. Pettigrew, he appears to allege both negligence and an intentional tort. Both claims fail under Oklahoma law.

17. For his negligence claim, Plaintiff alleges Dr. Pettigrew "prepared and shared with Defendant Principal [Life]" a report that was "negligently below the standard of care." [*Id*. at ¶ 9.] Plaintiff claims Dr. Pettigrew, as a licensed physician, owed both Plaintiff and Principal Life "a duty…to perform a fair and legitimate examination and to render a fair and honest opinion." [*Id* at ¶ 10.] Plaintiff further alleges Dr. Pettigrew "breached the duty he owed to Plaintiff (and to Defendant Principal [Life])," and that the breach caused Plaintiff to suffer "actual monetary damages, inconvenience, loss of peace of mind and security, emotional distress, worry, anguish, and financial distress." [*Id*. at ¶¶ 11, 12.] Plaintiff does not allege he suffered any type of physical injury because of Dr. Pettigrew's alleged conduct.

18. Plaintiff's negligence claim fails as a matter of law because Dr. Pettigrew did not owe any duty to Plaintiff. Courts across the country have considered the duty owed by a physician who performs an IME at the request of an insurer and have found that such physicians do not owe any duty to the insured. That is because "an IME[] performed, at the request of a third party, does not give rise to a physician-patient relationship." *Adams v. Gelman*, CA. No. N15C-06-030 MMJ CCLD, 2016 WL 373738, *4 (Del. Super. 2016). When there is no physician-patient relationship, "[t]he doctor's duty to use reasonable care in making and preparing the [IME] report runs to the party requesting it; there, that [is the insurer], not plaintiff." *Martinez v. Lewis*, 969 P.2d 213, 217 (Colo. 1998); *see also Hafner v. Beck*, 916 P.2d 1105, 1108 (Ariz. Ct. App. 1995) ("[T]he trial court correctly ruled that

[physician's] duty to meet the professional standard of care in conducting the IME and in preparing his report ran only to the [third party], which requested his services, and not to the examinee."). As the Utah Court of Appeals has explained,

> A majority of jurisdictions support this analysis and have adhered to the general rule that a physician who is retained by a third party to conduct an examination of another person and report the results to the third party does not enter in a physician-patient relationship with the examinee and is not liable to the examinee for any losses he suffers as a result of the conclusions the physician reaches.

*Joseph v. McCann*, 147 P.3d 547, 551 (Utah Ct. App. 2006) (collecting cases). *See also Martinez*, 969 P.2d at 219 (holding IME doctor owed no duty of care to insured and noting "this conclusion is in accord with virtually every other court to consider this issue").

19. Although research revealed no Oklahoma cases specifically addressing the duty owed by a physician who conducts an IME, a recent decision by the Oklahoma Supreme Court indicates Oklahoma courts would follow the analysis adopted by "virtually every other court to consider this issue." In *Trinity Baptist Church v. Brotherhood Mutual Insurance Services, LLC*, the Oklahoma Supreme Court considered "[w]hether an insured party can maintain a separate tort action for negligence against an independent insurance adjuster employed by the insurer." 341 P.3d 75, 82 (Okla. 2014). Following the previous analysis of the United States District Court for the Western District of Oklahoma, the Oklahoma Supreme Court adopted the majority view that "an insured cannot maintain a separate tort action for negligence against an independent insurance adjuster hired by the insurer because the independent adjuster ***owes the insured no duty of care***." *Id*. at 83-84 (emphasis added). As the *Trinity* court explained,

> [i]n the context of an insurance claim, it is "[t]he insurer [that] contractually controls the responsibilities of its adjuster and retains the ultimate power to deny coverage or pay the claim. Subjecting adjusters to potential tort liability from insureds could create conflicting loyalties with respect to the adjusters' contractual obligations, given that insureds and insurers often disagree on the extent of coverage or the amount of damages….Put more succinctly, "'[c]reating a separate duty from the adjuster to the insured would thrust the adjuster into what could be an irreconcilable conflict between such duty and the adjuster's contractual duty to follow the instructions of its client, the insurer.'"

*Id*. at 85 (internal citations omitted). The same reasoning applies to an independent physician hired by the insurer to perform an IME. Accordingly, Dr. Pettigrew did not owe a duty to Plaintiff. "Where the defendant did not owe a duty of care to the plaintiff, there can be no liability for negligence as a matter of law." *Id*. at 82.

20. Because Plaintiff's negligence claim against Dr. Pettigrew fails as a matter of law, that claim "will not defeat removal" in this case. *Texas Roadhouse*, 2015 WL 6020277 at *1.

21. Plaintiff's undefined "intentional" tort against Pettigrew also fails. As a preliminary matter, Plaintiff has failed to adequately plead any "intentional" tort. Although Plaintiff alleges that Dr. Pettigrew's IME report was "either negligently below the standard of care or was intentionally false," [Compl., Ex. 1 at ¶ 9], and that Dr. Pettigrew "acted intentionally to interfere with Plaintiff's contractual right to receive disability benefits," [*id*. at ¶ 13], he offers nothing more than these conclusory allegations of intentional conduct. Plaintiff's conclusory allegations fail to state a claim upon which relief may be granted.

22. Federal pleading standards require a plaintiff to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 US 662, 678 (2009).[2] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

23. Here, Plaintiff's conclusory allegations that Dr. Pettigrew acted intentionally to interfere with Plaintiff's contractual rights are the "[t]hreadbare recitals" rejected in *Iqbal*. Plaintiff fails to allege any facts to support his allegation that Dr. Pettigrew acted intentionally to interfere with Plaintiff's claim to insurance benefits. Although Plaintiff is not required to prove his allegations in the Complaint, he is required to plead enough facts to "nudge[ his] claims…across the line from conceivable to plausible." *Id*. at 680. Plaintiff has failed to carry that burden.

24. Moreover, for the reasons explained above in Paragraph 19, Oklahoma courts will not allow Plaintiff to sue Dr. Pettigrew for his role in assisting Principal Life with the assessment of Plaintiff's claim for insurance benefits. Although *Trinity* addressed the viability of a negligence claim against a third-party engaged by an insurer to assist with claims assessment, the Supreme Court's reasoning is equally applicable to Plaintiff's

[2] Federal pleading standards apply because, "[a]fter the removal of an action from state court…the case will proceed as if it originally had been brought in the federal court. Thus, it has been settled by numerous cases that the removed action will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters." *Wallace v. Microsoft Corp*., 596 F.3d 703, 706 (10th Cir. 2010).

allegations of an intentional tort. As the District Court for the Northern District of Oklahoma has recognized, the reasoning in *Trinity* applies to any "third parties retained by insurance companies to assist in the evaluation of an insured's claim." *Hightower v. USAA Casualty Ins. Co.*, No. 16-CV-274-JED-FHM, 2017 WL 1347689, *2 (N.D. Okla. Apr. 7, 2017). That is because, as noted above, "it is '[t]he insurer [that] contractually controls the responsibilities of its [IME physician] and retains the ultimate power to deny coverage or pay a claim." *Trinity*, 341 P.3d at 85. To allow an insured to sue the IME physician would be to "allow for potential double recovery, permitting the insured to recover in tort both for breach of contract or breach of the duty of good faith and fair dealing by the insurer—caused by an [IME physician's] negligent conduct—and from the [IME physician] for the same conduct." *Id.* at 86. This would "create a redundancy unjustified by the inevitable costs that eventually would be passed on to the insureds." *Id.*

25. Other courts have recognized this principle in the context of an IME physician. In *Cherry Creek Mortgage Co. v. Chiu*, the court held:

> [I]n an ordinary claim for bad faith breach of an insurance contract, where the plaintiff seeks damages for the insurance company's bad faith refusal to pay benefits, it would be incongruous for the jury to be instructed to apportion fault to a non-party independent medical examiner. Simply stated, neither a co-defendant nor a designated non-party at fault can be apportioned damages arising out of a claim that could not, in the first instance, have been asserted against it as a defendant.

No. 08-CV-01166-KMT-BNB, 2008 WL 5216263, *3 (D. Colo. Dec. 11, 2008).

26. In *Wallace v. Allstate Insurance Co.*, the case on which the Oklahoma Supreme Court based its analysis in *Trinity*, Judge Heaton found that "[r]ecognizing a potential tort recovery [against a claims adjuster] would be inconsistent with the standards

developed by Oklahoma as to the insured-insurer relationship," and would "conflict with the Oklahoma Supreme Court's decision that in the context of a coverage dispute between an insurer and insured, unless the insured proves bad faith, his recovery will be limited to damages for breach of contract." No. CIV-12-0310-HE, 2012 WL 2060664, *2 (W.D. Okla. June 7, 2012). The same is true here. Plaintiff should not be permitted to redefine the insured-insurer relationship by alleging that Dr. Pettigrew committed a tort in providing IME services to Principal Life.

27. The *Wallace* court also found that because a claim against an independent insurance adjuster is not viable under Oklahoma law, naming an independent insurance adjuster as a party to destroy diversity jurisdiction is fraudulent joinder. *Id.* at 3. Accordingly, the court denied the *Wallace* plaintiff's motion to remand. This court should follow that precedent if Plaintiff moves to remand this case.

28. As shown above, Plaintiff has no reasonable basis for any claim against Dr. Pettigrew and has therefore failed to state any causes of action against Dr. Pettigrew. This amounts to fraudulent joinder, and Dr. Pettigrew's status as an Oklahoma resident should not prevent removal.

WHEREFORE Principal Life respectfully requests that the above referenced action now pending in the District Court of Oklahoma County, State of Oklahoma, be removed therefrom and proceed in this Court as an action duly removed from this day forward.

DATED: this 12th day of May, 2017.

Respectfully submitted,

/s/ James Wesley S. Pebsworth
Lisa T. Silvestri, OBA No. 19239
James Wesley S. Pebsworth, OBA No. 30900
GABLEGOTWALS
1100 ONEOK Plaza
100 W. 5th Street
Tulsa, OK 74103-4217
(918) 595-4800
(918) 595-4990 fax
*lsilvestri@gablelaw.com*
*wpebsworth@gablelaw.com*

***Attorneys for Defendant***
***Principal Life Insurance Company***

## CERTIFICATE OF MAILING

I do hereby certify that on the 12th day of May, 2017, a true, correct and exact copy of the above and foregoing document was served by placing same in the United States mail, with proper postage thereon duly prepaid, to counsel of record as listed below:

Derek K. Burch
Burch, George & Germany
1500 City Place Building
204 N. Robinson
Oklahoma City, OK 73102

Randall L. Sewell
WIGGINS SEWELL & OGLTREE
3100 Oklahoma Tower
210 Park Avenue
Oklahoma City, OK  73102

/s/ James Wesley S. Pebsworth
James Wesley S. Pebsworth